■ PACESETTER COMMUNICATIONS CORPORATION et al., Respondents, v SOLIN & BREINDEL, P. C., Appellant.—Order,

Supreme Court, New York County (Andrew Tyler, J.), entered November 3, 1988, which denied defendant's motion for summary judgment, unanimously reversed, on the law, and the motion granted and the complaint dismissed, without costs.

This is a legal malpractice action arising from defendant law firm's representation of the plaintiffs in an antitrust suit in United States District Court, wherein plaintiffs sued for over $2,000,000 in damages. During the trial of the antitrust action, a directed verdict dismissing the claim was granted at the conclusion of plaintiff's case, and summary judgment was granted on the counterclaim against the plaintiffs in the amount of over $500,000. Dissatisfied with this result, the plaintiffs commenced the instant action for legal malpractice against their former attorneys, defendant Solin & Breindel, P. C. (S & B).

The instant complaint asserts two causes of action—one for legal malpractice and the other for breach of contract based on the retainer agreement. Both causes of action essentially allege that S & B failed to conduct the antitrust trial with skill and diligence and failed to follow the plaintiffs' instructions to obtain an adjournment during the course of the trial, as a result of which plaintiffs lost the antitrust case.

To prevail in an action for legal malpractice, the plaintiff must show that the attorney was negligent and that "but for" the attorney's negligence the plaintiff would have prevailed in the underlying case.

The facts giving rise to the antitrust case in issue are as follows. Pacesetter was engaged in the telephone "interconnect" industry and since 1975 had focused on the "large switch" market. In that regard, it was a distributor of "large switches" manufactured by NEC Telephone, Inc., a subsidary of the large Japanese electronics firm Nippon Electric Co., Ltd. A competitor distributor of NEC large switches was a company named Telecom Equipment Corp. Pacesetter alleges that Telecom conspired with NEC to drive Pacesetter from the large switch market because Pacesetter was undercutting Telecom's prices. Accordingly, in 1978 Pacesetter retained S & B to commence an action in the United States District Court (SD NY) against Telecom, NEC, and various individuals, asserting claims, pursuant to sections 1 and 2 of the Sherman Antitrust Act (15 USC), that Telecom and NEC had engaged in an unlawful conspiracy to restrain trade and monopolize. NEC and Telecom denied those charges and asserted a counterclaim against Pacesetter for goods sold and delivered.

In 1979, Pacesetter substituted another law firm for S & B. In 1980, Pacesetter discharged the other firm and once again retained S & B pursuant to a retainer agreement. Thereafter, in 1981, Pacesetter settled with Telecom, and proceeded to trial against NEC and certain individual defendants.

On the eve of trial, one of Pacesetter's expert witnesses, Donald Santos, underwent serious back surgery, rendering him unavailable to testify at trial. Mr. Santos was to be the "market expert", testifying on the nature of the relevant market and the impact of NEC's alleged wrongdoing on that market. S & B did not ask for an adjournment of the trial or attempt to obtain another market expert. Instead, S & B made the strategic decision to attempt to introduce the relevant market evidence through the testimony of plaintiff Arthur Gerofsky, the principal of Pacesetter, who had been engaged in the telephone interconnect industry since its inception.

At the close of plaintiffs' case, the defendants moved for a directed verdict. The Federal District Judge (Carter, J.) granted the motion and dismissed Pacesetter's claims, finding in the main that plaintiffs had established no evidence of a *conspiracy,* a central and necessary element of plaintiffs' antitrust claims.

The gravamen of plaintiffs' malpractice claim against S & B is the failure to ask for an adjournment and obtain further proof for the antitrust action when it learned that the "market expert", Santos, would be unavailable to testify.

The instant appeal is from the denial of S & B's motion seeking summary judgment on the ground that the plaintiffs' malpractice claim is legally insufficient. It is well settled that to recover for legal malpractice, it must be shown not only that the attorney was negligent, but also that "but for" the attorney's negligence the plaintiff would have prevailed in the underlying action. *(E.g., Vooth v McEachen,* 181 NY 28; *Larson v Crucet,* 105 AD2d 651.) In support of its motion for summary judgment, S & B demonstrated that the absence of Santos' testimony on market issues was irrelevant to the basis on which the directed verdict was issued—that is, the failure to prove a conspiracy—and, therefore, even assuming, arguendo, that S & B was negligent in failing to obtain an adjournment, plaintiffs did not lose their case but for this negligence.

In denying the motion for summary judgment, the motion court found that the underlying issues in the antitrust matter were complex and that it was, therefore, difficult to demon-

strate "to a certainty" on a motion for summary judgment that but for S & B's conduct during the trial plaintiffs would have prevailed in the antitrust case.

The motion for summary judgment was improperly denied. While antitrust matters in general may be complex, the matters here at issue are capable of summary disposition. Pacesetter's claims in the underlying action were for conspiracy in restraint of trade (15 USC § 1) and conspiracy to monopolize (15 USC § 2). In that regard, antitrust law is clear that significant probative evidence of a conspiracy is an essential element of all claims for violation of section 1 and claims of conspiracy to monopolize in violation of section 2. *(E.g., Potters Med. Center v City Hosp. Assn.,* 800 F2d 568; *American Key Corp. v Cole Natl. Corp.,* 762 F2d 1569, 1579.) Furthermore, proof of relevant market is not necessary to prove a section 1 case or a *conspiracy* to monopolize case under section 2. *(E.g., Salco Corp. v General Motors Corp.,* 517 F2d 567, 576.) S & B's failure to obtain a last minute adjournment to produce another market expert would not, therefore, have changed the result of the antitrust case, which was dismissed for failure to establish a conspiracy. Thus plaintiffs failed to demonstrate that "but for" defendant's failure to produce a market expert, even if such were negligent, plaintiffs would have prevailed.

Nor should summary judgment have been denied because the motion court concluded that it would be difficult to require plaintiffs in opposition to a summary judgment motion to demonstrate "to a certainty" that they would have prevailed. The applicable standard is that one opposing a summary judgment motion must produce evidentiary proof sufficient to require a trial of material questions of fact. *(E.g., Zuckerman v City of New York,* 49 NY2d 557.) Here, plaintiffs merely made conclusory assertions of an expectation that they would have prevailed on the underlying claim. While to defeat defendant's motion for summary judgment they need not have shown "to a certainty" that they would have prevailed, they were required to lay bare their proof to demonstrate a material issue of fact that they would have prevailed but for S & B's negligence. Plaintiffs have not done so. They have not demonstrated that an adjournment would have enabled them to produce another market expert. More significantly, however, there is no showing what Santos, or a substitute market expert witness, if any, would have testified to, and what impact, if any, such testimony would have had on the crucial issue of "conspiracy". The other complaints raised by the

plaintiffs in criticism of S & B 's conduct of the trial, such as the alleged mishandling of the "economics witness" at trial, the effect of the settlement with Telecom on the presentation of the case against NEC, and the manner in which the defense of the counterclaims was conducted, are no more than the second-guessing of counsel's strategic judgment in the selection of trial tactics and do not rise to the level of legal malpractice. *(See, Rosner v Paley,* 65 NY2d 736.) Since plaintiffs failed to raise any material triable issues of fact in opposition to the summary judgment motion on the cause of action for legal malpractice, the motion dismissing that cause of action should have been granted.

The motion should similarly have been granted dismissing the second cause of action for breach of contract. A breach of contract claim against an attorney based on a retainer agreement may be sustained only where the attorney makes an express promise in the agreement to obtain a specific result and fails to do so. *(See, Boecher v Borth,* 51 AD2d 598; *Glens Falls Ins. Co. v Reynolds,* 3 AD2d 686.) Here, the retainer agreement expressly disavows any specific promises, stating that "[w]e have made no representations or guarantees to you that any result can or will be obtained, or is likely to be obtained, in this matter". The plaintiffs' reliance on S & B's alleged earlier analysis that the case was "extremely favorable" is overcome by the express language of the contract sued upon and cannot raise an issue of fact to defeat summary judgment on the contract claim.

Accordingly, the order is reversed and summary judgment granted to the defendant dismissing the complaint. Concur—Sullivan, J. P., Ross, Kassal, Rosenberger and Ellerin, JJ.