OPINION OF THE COURT
Simons, J.
Plaintiff instituted this action in 1991 alleging in its third cause of action that defendant AVX had tortiously induced the breach of its contract with another. AVX moved to dismiss the cause of action claiming it was time-barred (CPLR 3211 [a] [5]). The parties agree that the three-year Statute of Limitations for injury to property applies (see, CPLR 214 [4]), and the sole question presented is whether the cause of action accrued when the contract was breached in 1984, as AVX contends, or in 1988 when plaintiff alleges it first suffered actual damages as a result of AVX’s tortious conduct. Plaintiff had no cause of action, and the Statute of Limitations could not start to run, until plaintiff suffered injury (see, Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 300; see generally, Siegel, NY Prac § 40, at 47 [2d ed]). Inasmuch as plaintiff’s complaint alleges facts demonstrating that no injury was sustained until 1988, AVX’s motion to dismiss should be denied.
I
Assuming as we must for purposes of this motion that the facts set forth in the amended complaint are true (Nasaba Corp. v Harfred Realty Corp., 287 NY 290, 294), plaintiff’s predecessor was the owner of patents for producing "multilayer capacitors” used in certain electronic devices. In 1974, it granted Corning Glass Works a nonexclusive license to produce capacitors under the patents. The agreement gave Corning "most favored licensee” status, i.e., if more favorable terms were subsequently negotiated by the licensor with another, the licensor was required to offer Corning the same terms. Five years later, plaintiff sold its capacitor assets to *93 codefendant TAM Ceramics, Inc. and assigned the patents and its rights under the Corning license to TAM as a part of the transaction. TAM was to administer the Corning license in the interest of both parties and pay one half of all future royalties to plaintiff.
In 1984, without notice to plaintiff or Corning, TAM entered into a license agreement with defendant AVX under terms more favorable than those in Coming’s licensing agreement, and AVX began competing with Corning in the capacitor market. In spite of this competition, however, plaintiff’s share of royalties from the Corning license continued to rise through 1987. At that time, Corning learned of AVX’s license and advised TAM that it had violated the "most favored licensee” provisions by not offering it comparable terms. The matter was never resolved, TAM taking the position it had no obligation to renegotiate the Corning license. A few months later AVX acquired from Corning the assets it used to manufacture capacitors without assuming any royalty obligation to plaintiff or TAM under the agreement. Because its own license contained no limit on production, AVX was able to use both its preexisting facilities and those acquired from Corning to produce its capacitors without resorting to the Corning license. In March of 1988, TAM informed plaintiff that no further payments from the Corning license would be made.
Plaintiff commenced an action in February 1991, seeking damages from AVX for its tortious inducement to breach plaintiff’s contract with TAM and for intentionally inflicting economic harm. AVX subsequently moved to dismiss, arguing the claims were time-barred.[1] It claims that accrual occurred in 1984, when TAM allegedly breached its contract with plaintiff by entering into the licensing agreement with AVX. The trial court found that no breach occurred until 1988, when TAM ceased making payments under the Corning license but the Appellate Division reversed concluding that the breach occurred, and the cause of action accrued, in 1984 on the date TAM and AVX entered into their licensing agreement. *94 [2] In response to plaintiffs contention that the damage element necessary for its tort claim did not arise until 1988, the Appellate Division relied on the well-established rule of contract law that the law will infer at least nominal damages at the moment of breach.
II
Were this an action sounding in contract, AVX would be correct in its insistence that settled law marks accrual from the contractual breach. However, plaintiffs cause of action is one sounding in tort, and, as a general proposition, a tort cause of action cannot accrue until an injury is sustained (Schmidt v Merchants Desp. Transp. Co., 270 NY 287, 300-301, supra; see generally, Siegel, NY Prac § 40, at 47 [2d ed]). That, rather than the wrongful act of defendant or discovery of the injury by plaintiff, is the relevant date for marking accrual (Schmidt v Merchants Desp. Transp. Co., supra, at 300). The Statute of Limitations does not run until there is a legal right to relief. Stated another way, accrual occurs when the claim becomes enforceable, i.e., when all elements of the tort can be truthfully alleged in a complaint (see, Jacobus v Colgate, 217 NY 235, 245; Roldan v Allstate Ins. Co., 149 AD2d 20, 26).
The tort of inducement of breach of contract, now more broadly known as interference with contractual relations, consists of four elements: (1) the existence of a contract between plaintiff and a third party; (2) defendant’s knowledge of the contract; (3) defendant’s intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff (Israel v Wood Dolson Co., 1 NY2d 116, 120; see generally, Restatement [Second] of Torts § 766; 4 Lee and Lindahl, Modern Tort Law § 45.02, at 20 [rev ed]). Since damage is an essential element of the tort, the claim is not enforceable until damages are sustained. Thus, in its present posture, this action is time-barred only if plaintiff’s complaint must be read to allege damages arising prior to 1988.
Plaintiff states in its complaint that it suffered damages in 1988: it has made no allegation of damage occurring before *95 that date. AVX advances two themes for finding otherwise: it maintains that the damage element must be construed as arising in 1984 because the law always infers at least nominal damages at a contractual breach or, alternatively, because actual damages at the time of breach must be inferred from the particular facts of this complaint.
AVX first proposes that the legal fiction of nominal damages be imported from contract law into this tort action. By doing so, and assuming for the sake of argument that the events of 1984 constituted a contractual breach, the court would be compelled to find that all the elements of the tort claim were present in 1984 and the cause of action accrued then. The use of the contractual breach as the date of accrual has been accepted in some jurisdictions (see, e.g., Metro Oil Co. v Sun Ref. & Mktg. Co., 936 F2d 501, 504; Rock Is. Bank v Aetna Cas. & Sur. Co., 692 F2d 1100, 1103) with some courts expressly employing the legal fiction of nominal damages (see, e.g., Bankers Health & Life Ins. Co. v Fryhofer, 114 Ga App 107, 150 SE2d 365, 369-370; Note, Damages Recoverable in an Action for Inducing Breach of Contract, 30 Colum L Rev 232, 238). To do so, however, is to ignore the fundamental differences between tort and contract principles.
Nominal damages are always available in breach of contract actions (5 Corbin, Contracts § 1001, at 29), but they are allowed in tort only when needed to protect an "important technical right” (Note, Damages Recoverable in an Action for Inducing Breach of Contract, op. cit., at 238). For example, nominal damages have been recognized in tort to protect a landowner’s right to be free of trespass, but that exception from the established rule that actual injury must be shown is warranted because a continuing trespass may ripen into a prescriptive right and deprive a property owner of title to his or her land (Prosser and Keeton, Torts, at 75 [5th ed]). There is no similarly compelling reason for departing from the actual injury rule when the trespass alleged is not to real property but to a chattel (1 Harper, James and Gray, Torts § 2.3, at 141-143 [2d ed]) or, as in the present case, to an intangible property right arising under contract. In such cases, actual loss must be demonstrated (see, Prosser and Keeton, op. cit., at 1002-1003; Annotation, Liability for Procuring Breach of Contract, 26 ALR2d 1227, § 43; see, e.g., Hodge v Meyer, 252 F 479, cert denied 248 US 565; Myers v Arcadio, Inc., 73 NJ Super 493, 180 A2d 329).
*96 There is no anomaly in the fact that nominal damages are recognized in plaintiffs breach of contract claim against TAM but disallowed in this tort action, in which the same contractual breach is an element. Fundamentally different functions are served by an action in tort on the one hand, and an action in contract on the other, and an understanding of that functional difference is critical to understanding why nominal damages are appropriate in one and not in the other. Contract liability is "imposed by the law for the protection of a single, limited interest, that of having the promises of others performed * * * The law of torts * * * is concerned with the allocation of losses arising out of human activities” (Prosser and Keeton, op. cit, at 5-6). In other words, a party’s rights in contract arise from the parties’ promises and exist independent of any breach. Nominal damages allow vindication of those rights. In tort, however, there is no enforceable right until there is loss. It is the incurring of damage that engenders a legally cognizable right. To recognize nominal damages element of tort claims would be to wrest the cause of action from its traditional purposes — the compensation of losses — and to use it to vindicate nonexistent or amorphous inchoate rights when unlike in trespass to property, there is no compelling reason to do so.
Moreover, it is important to distinguish the two breaches in this cause of action — one a tortious breach, the other a contractual breach — and to understand their differing legal significance. AVX’s breach of duty in tort owing to plaintiff occurred when it allegedly made improper inducements to TAM. That tortious breach is separate and distinct from any contractual breach committed by TAM. For purposes of this litigation, the contractual breach is a result of the tortious breach and, in large measure, simply a link in the causal chain between defendant’s wrongful act and plaintiff’s injury. No need to make a right enforceable against defendant arises at that point, for no right exists until there is loss.
AVX’s second theory for finding that damages arose in 1984 is that the particular factual allegations made by plaintiff necessarily imply damages at the time the contract was breached. Though plaintiff alleges no damages in 1984, we would nonetheless be bound to recognize them if the only reasonable inference to be drawn from plaintiff’s allegations is that it suffered some loss at that time (see, Nasaba Corp. v Harfred Realty Corp., 287 NY 290, 294, supra). A review of the amended complaint does not support such an inference.
*97 AVX’s theory is that when TAM and AVX entered into a separate licensing agreement in 1984, the value of the Corning license was diminished and plaintiff thus suffered immediate economic loss. However, it does not follow that injury necessarily occurred at the moment TAM merely promised to act in a manner counter to plaintiff’s interests. Either TAM or AVX could have chosen not to follow through on the second contract, or TAM could have decided to abide by the "most favored licensee” terms of the Corning license, thereby protecting whatever interest plaintiff had (see, Fury Imports v Shakespeare Co., 625 F2d 585, cert denied 450 US 921). Because the Corning license was nonexclusive, a fact that would have been reflected in its value in the marketplace, TAM’s act of agreeing to create a new licensee, without more, does not compel us to infer actual injury from the facts as stated in the complaint. Indeed, after making the second licensing arrangement, TAM continued to honor the financial terms of its agreement with plaintiff through 1987, with plaintiff’s royalty revenue from the Corning license actually increasing. In 1987, some three years after AVX had received its license and begun competing in the capacitor market, Corning continued to predict substantial profits from its capacitor operation. AVX’s argument that plaintiff’s complaint characterizes the events of 1984 as creating a "competitive disadvantage” is not availing. More than an inchoate "disadvantage” would be required to indicate actual economic loss in 1984, and the facts alleged in the amended complaint do not require the inference, as a matter of law, that damages were suffered prior to 1988.
To summarize, no cause of action for tortious inducement to breach a contract arises until actual damages are sustained; nominal damages associated with the underlying breach of contract will not stand in the stead of actual damages; and, finally, no inference of actual damages is implicit by the facts alleged in the amended complaint.
Accordingly, the order of the Appellate Division should be reversed, with costs, and defendant AVX Corporation’s motion to dismiss the third and fourth causes of action of the amended complaint denied.
Chief Judge Kaye and Judges Titone, Hancock, Jr., Bellacosa and Smith concur.
Order reversed, etc.

. Because the motion sought relief only under CPLR 3211 (a) (5), we do not address the arguments in defendant’s brief that the amended complaint fails to state a cause of action. Intentional infliction of economic harm has not been recognized in New York, and we state no opinion on this limited motion whether it should be. The claim, if such there was, accrued at the same time as the cause of action for inducement and would be governed by a three-year Statute of Limitations.

. Plaintiff would clearly prevail if the breach occurred in 1988 and while it renews this argument on appeal it relies principally on its claim that the cause of action did not accrue until it sustained actual damages in 1988. We agree with the Appellate Division that the complaint alleges a breach occurring in 1984.