[728 NYS2d 146]

CLAUDIA D'AMICO, Respondent, v FIRST UNION NATIONAL BANK et al., Appellants.

First Department, July 19, 2001

## APPEARANCES OF COUNSEL

*Ambrose M. Richardson* of counsel, New York City (*Richardson Mahon Casey & Rooney, L. L. P.,* attorneys), for respondent.

*Mark L. LoSacco* of counsel, New York City (*Lawrence E. Miller* and *Donna L. Gordon* on the brief; *LeBoeuf, Lamb, Greene & MacRae, L. L. P.,* attorneys), for First Union National Bank, appellant.

*Jack Kaufmann* of counsel, New York City (*Helena Tavares Erickson* on the brief; *Dewey Ballantine, L. L. P.,* attorneys), for William B. Warren and another, appellants.

## OPINION OF THE COURT

ANDRIAS, J.

Plaintiff commenced this action to recover money damages in excess of $12 million as the result of the alleged misappropriation of trust assets by her mother and uncle, now both deceased. When plaintiff's grandfather, Claude G. Aikens, a resident of Pennsylvania, died in 1966, he left a last will and testament that created both a marital deduction trust and a residuary trust, the second document being for the benefit of his wife Ruth, for her life and, upon her death, for the benefit of their two children, Mary Ann Dignan, plaintiff's mother, and Charles Thomas Aikens II, her uncle, and their living children. Since Ruth renounced her interest in the two trusts, only the residuary trust came into effect, and it was divided into separate shares, one each for Mary Ann and Charles, who became the trustees thereof. Mary Ann and Charles had the right, under the will, to withdraw up to 50% of the principal of their respective portions of the trust, as well as to invade the trust and distribute any remainder to themselves.

Consequently, Mary Ann and Charles terminated the trust in June of 1972 and transferred the assets to themselves. Mary Ann thereafter established two revocable inter vivos trusts for her own benefit, and the predecessor of defendant First Union National Bank became the trustee of the first, while defendant William B. Warren was made the trustee of the second. The remaining defendant, Richard J. Miller, Jr., was, along with Warren, Mary Ann's attorney with respect to matters relating to trusts and estates; plaintiff was the beneficiary of both

trusts. Mary Ann and Charles both died in 1989 and First Union was appointed personal representative of the former's estate. The bank duly filed with the United States Internal Revenue Service (IRS), an estate tax return, submitting therewith a payment in the amount of $1,698,234.28, which funds were taken from the first trust.

Plaintiff subsequently asserted demands against her mother's estate, maintaining that she had become entitled to a share of the residuary trust when she turned 21 years of age and that Mary Ann and Charles had breached the terms of the residuary trust by withdrawing all of its principal. Accordingly, in December of 1990, First Union filed a so-called protective refund claim with the IRS, which was disallowed in February of 1992 on the ground that the estate had not, in fact, been liable to plaintiff and that she was, therefore, unlikely to succeed in her claim. At the IRS's request, the bank signed and returned, in June 1992, Form 2297, a Waiver of Statutory Notification of Claim Disallowance, and the Statute of Limitations for a refund demand expired in June 1994.

Meanwhile, plaintiff and her cousins had objected to the final accounting for their grandfather's trust. Litigation ensued in Pennsylvania, Florida and the Southern District of New York, and, in 1991, Warren instituted an accounting proceeding in New York County Surrogate's Court, with regard to Mary Ann's estate.

The parties to the various lawsuits entered into settlement discussions in the spring of 1992, culminating in a partial settlement agreement in December 1993, which was approved by the New York County Surrogate's Court on August 22, 1994. Plaintiff, her cousins, First Union, Warren and the law firm of Dewey Ballantine were all parties to the agreement, pursuant to which the signatories mutually discharged each other from any future claims and liabilities and, in exchange for the release, plaintiff received nearly $800,000 from the settlement of the New York trust, $500,000 from the sale of certain real property and substantial benefits from a Florida trust. She was also afforded $14,529 from the Florida trust in accordance with a stipulation and order of the United States District Court for the Southern District of New York. Since the settlement agreement further required First Union to file with the IRS an amended tax return and a refund claim, Miller, who had resigned from Dewey Ballantine in July 1993 and succeeded to that firm's representation of First Union as the personal representative of Mary Ann's estate, prepared and submitted, in

September 1994, an application for a tax refund in excess of $1.5 million. In February 1996, the IRS disallowed all but $9,605.60 of the sum demanded because the claims that had been advanced by plaintiff and settled in the agreement had been against the trusts and not against the probate estate, and, thus, they were not properly expenses of the estate. Although plaintiff appealed the foregoing ruling, the IRS rejected the appeal in November 1997.

In December 1997, plaintiff commenced a new Federal action against defendants in the Southern District of New York, alleging RICO violations, breach of fiduciary duty, fraud and waste. By order dated February 9, 1999, that court granted defendants' motions to dismiss the RICO claims and declined to exercise supplemental jurisdiction over plaintiff's remaining State law assertions. While the court afforded plaintiff 20 days to replead, a final judgment dismissing the matter was entered on or about March 30, 1999. Plaintiff filed a notice of appeal but never perfected her appeal, which was dismissed on June 4, 1999. Instead, she brought this lawsuit in September 1999, asserting causes of action for breach of fiduciary duty, fraud, waste, legal malpractice and conversion.

Defendants separately moved, *inter alia*, pursuant to CPLR 3211, to dismiss the complaint, and the IAS court granted the motion to the extent of dismissing the first cause of action for breach of fiduciary duty as barred by the applicable three-year Statute of Limitations and the third cause of action for waste because of plaintiff's statement that she would not pursue it. However, the court refused to dismiss the allegations of fraud, malpractice and conversion, which are the subject of this appeal and are based upon plaintiff's allegation that defendants concealed material facts going to the heart of the settlement agreement by failing to disclose to her that the tax refund claims provided for in the agreement were not viable. By executing the agreement, defendants allegedly forestalled plaintiff's discovery of the true status of the tax claim.

The statutory period for asserting a cause of action for fraud is six years from the commission of the wrongful act, or within two years from the time that the fraud was discovered or should, with reasonable diligence, have been discovered, whichever is longer (*see* CPLR 203 [g]; 213 [8]; *Bloomfield v Bloomfield*, 280 AD2d 320; *Liberty Co. v Boyle*, 272 AD2d 380, 381).

Plaintiff alleges in her complaint that the settlement agreement was specifically structured to enable the heirs of Mary

Ann and Charles to pursue their estate tax claims, but, unknown to her and her cousins, First Union, counseled by Warren and Miller, had secretly and effectively waived such claims by, in June 1992, executing and delivering the aforementioned Form 2297 to the IRS. Furthermore, plaintiff alleges such action on the part of defendants purportedly allowed the Statute of Limitations to expire on the refund claim, and plaintiff did not learn of the fraudulent conduct until she first discovered, in February 1996, that the IRS had rejected the amended refund claim.

Plaintiff urges that the statutory period should be measured ·from no earlier than June 1994, the date that the IRS Statute of Limitations expired and she sustained damage. However, defendants' allegedly fraudulent act was committed in June 1992, when they are purported to have surreptitiously acquiesced in the denial by the IRS of the claim for a refund. That was certainly more than six years before the commencement of this lawsuit in September 1999, which was also more than two years from plaintiff's discovery, in February 1996, that the IRS would not accept the amended tax return. Thus, plaintiff's cause of action for fraud should have been dismissed as untimely.

■ In denying dismissal of the fourth cause of action for legal malpractice, the motion court found that such claim is governed by a three-year Statute of Limitations (CPLR 214 [6]). However, while the court agreed with defendants that the malpractice claim accrued on June 3, 1994, when the IRS Statute of Limitations expired, it held that the "continuing representation rule tolled the statute of limitations period until April 1997 when Miller was replaced." Consequently, the court held, the "statute of limitations expired on April 2000 and this action for malpractice was timely filed on September 29, 1999." Moreover, the court found, plaintiff stated a claim for legal malpractice against Warren and Miller since Miller was, until April 1997, "paid by funds under the [settlement] Agreement"; since, pursuant to that agreement, plaintiff was "to select an attorney to prosecute the tax refund claim [and] [s]he chose Miller," who "prepared and submitted a tax refund application in September 1994"; and, since plaintiff pleaded a face-to-face relationship with Warren and Miller.

However, the only purported acts of malpractice asserted by plaintiff are that, in January 1990, "Warren counselled First Union to pay the estate taxes on the disputed assets," that both he and Miller "willfully sabotaged the claim" and that,

based upon the advice of these two men, First Union waived her estate tax claim in 1992. Yet, notwithstanding that this litigation was not brought until September 1999, the IAS court applied the continuous representation rule to deny dismissal. This was unwarranted.

In the first place, Warren's representation of First Union terminated in August 1993. In the second place, plaintiff was never a client of either individual, and, thus, there could not possibly have been any continuing representation of her. At any rate, it is axiomatic that, absent special circumstances not here apparent, a claim for malpractice, whether by an attorney or other professional, requires privity between such professional and the party supposedly aggrieved (*see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 382; *State of California Pub. Employees' Retirement Sys. v Shearman & Sterling*, 269 AD2d 221, 222, *affd* 95 NY2d 427). Even assuming that the settlement agreement created the semblance of an attorney-client relationship between plaintiff and Miller, the purported malpractice occurred prior to the execution of that agreement, at a time when neither he nor Warren had any obligation to her. There was, thus, no basis for the motion court to perceive the possible existence of a face-to-face relationship between plaintiff and either Warren or Miller so as to sustain her cause of action for malpractice.

As to plaintiff's assertion of a cause of action for conversion, the motion court correctly held that the Statute of Limitations for conversion claims is three years (*see,* CPLR 214 [3]); that it begins to run when the plaintiff becomes aware that its agent's possession is hostile; and that First Union's possession was, until November 1997, "lawful and plaintiff was not aware that it would not turn * * * over the funds."

While "accrual [normally] runs from the date the conversion takes place (*see, Sporn v MCA Records*, 58 NY2d 482, 488) and not from discovery or the exercise of diligence to discover" (*Vigilant Ins. Co. v Housing Auth. of City of El Paso*, 87 NY2d 36, 44), it is well settled that, where the original possession is lawful, a conversion does not occur until after a demand and refusal to return the property (*MacDonnell v Buffalo Loan, Trust & Safe Deposit Co.*, 193 NY 92, 101).

Plaintiff maintains that pursuant "to the terms of the Partial Settlement Agreement, all assets in trust were to be distributed" to her but that "First Union, aided and abetted by Miller, did not distribute such funds" and, instead, "either withheld such funds or converted them to their own use."

Although plaintiff could apparently have demanded the funds in question after the agreement was approved by the Surrogate in August 1994, she had no reason to believe that First Union's possession was hostile until it refused to accede to her 1997 demand unless she released it from all liability and because of certain attorneys' fees claimed by Miller in connection with the unsuccessful tax refund claim.

■ Finally, as to plaintiff's causes of action for fraud and legal malpractice, they are barred by the 12th paragraph of the settlement agreement, wherein the parties agreed to "hereto release and forever discharge each other and their respective legal counsel * * * from any and all kind of actions, claims, demands, liabilities, suits of any kind, including but not limited to, claims for consequential, punitive and exemplary damages, on account of all losses or damages suffered or claimed to be suffered with regard to or in connection with the assets of the Residuary Trust under the Will of Claude G. Aikens, who died a resident of Centre County, Pennsylvania, in 1966, including but not limited to those actions and claims which have been asserted in the Litigation." In determining that the agreement does not preclude plaintiff from advancing her claims against defendants, the motion court relied upon a reservation of rights in paragraph 8; however, such reservation of rights is directed only at any claims that plaintiff may have against her mother's estate, the New York trust and the Florida trust arising out of any actions by Mary Ann and not against defendants themselves. Moreover, since she has already reaped the benefits of the agreement, including receiving ample monetary payment thereunder, plaintiff is hardly in a position to attempt to invalidate that portion of the agreement, i.e., the release with which she is unhappy, by now accusing defendants of fraud. Consequently, regardless of whether plaintiff's mother engaged in the misappropriation of trust assets, her current fraud and legal malpractice claims against these defendants are both untimely and barred by the release in the settlement agreement. However, plaintiff's cause of action for conversion, which accrued three years later, cannot be said to have been similarly barred.

Accordingly, the order of the Supreme Court, New York County (Louise Gruner Gans, J.), entered October 19, 2000, which, to the extent appealed from, denied that part of defendants' motion which sought dismissal of the second, fourth and fifth causes of action, alleging fraud, legal malpractice and conversion, should be modified, on the law, to the

extent of granting defendants' motion dismissing the second and fourth causes of action for fraud and legal malpractice, and otherwise affirmed, without costs.

ROSENBERGER, J. P., TOM and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered October 19, 2000, modified, on the law, to the extent of granting defendants' motion dismissing the second and fourth causes of action, and otherwise affirmed, without costs.