Daniel CALCUTTI, Plaintiff,

v.

SBU, INC., the Private Bank and Trust Company, Richard G. Monaco, Esq., the Travelers Group, the Travelers Companies and Charter Oak Fire Insurance Co. Defendants.

No. 02 CIV 41(VM).

United States District Court, S.D. New York.

Sept. 16, 2002.

Ronald W. Weiner, Steinberg & Cavaliere, LLP, White Plains, NY, for SBU, Inc.

Jonathan A. Wexler, David P. Doyle, James V. Garvey, Vedder, Price, Kaufman & Kammholz, New York City, for Privatebank & TR, Richard G. Monaco.

James E. Rocap, III, Baker Botts, LLP, Washington, DC, Ellen Fels Berkman, for Travelers Group, Charter Oak Fire Ins. Co.

## DECISION AND ORDER

MARRERO, District Judge.

Plaintiff Daniel Calcutti ("Calcutti") filed this action in state court against the various named defendants. As regards defendant Richard G. Monaco ("Monaco"), Calcutti asserted claims for fraud, breach of contract, conversion, malpractice, negligence, negligent misrepresentation and contempt. Monaco removed the matter to this Court pursuant to 28 U.S.C. § 1338. Several defendants have filed dispositive motions. Before the Court is Monaco's motion to dismiss the complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

### I. FACTUAL BACKGROUND

Calcutti alleges that he was injured while present on property that was owned by Croton Park Colony, Inc. ("Croton Park") and insured by The Travelers Group ("Travelers"). The injury, which occurred while Calcutti was a minor, resulted in a nerve transplant, partial paralysis, pain and scarring. Calcutti retained Monaco to pursue his legal claims. On or about June 20, 1995, Monaco negotiated a settlement for Calcutti with Croton Park, the original defendant in an action Calcutti brought in the New York State Supreme Court, New York County (the "State Action"). The New York court approved the settlement on July 21, 1995. (*See* Infant Compromise Order, dated July 21, 1995 ("ICO"), attached to Plaintiff's Affirmation in Opposition, at Ex. B.)

First, the ICO required Croton Park to immediately pay $95,000 to its insurer, Travelers, as follows: (1) $70,000 to Monaco for the legal services he provided to Calcutti; (2) $17,000 to American International Recovery, Inc. for the discharge of a lien; (3) $4,799 to Dr. Andrew Salzburg for the medical services he provided Calcutti; and (4) $3,201 to Calcutti for the purchase of a computer system. The ICO required Travelers to pay Calcutti an annuity consisting of: (1) a one-time lump sum of $20,000 to Calcutti when he reached the age of twenty-one on June 22, 2001; (2) a $918.75 monthly installment beginning June 22, 2001 and ending on May 22, 2015; and (3) a final lump sum payment of $115,000 on June 22, 2015. The ICO also required Travelers to: (1) fund the annuity payments by purchasing United States Treasury Bonds ("Bonds") through SBU, Inc. ("SBU"); (2) register Calcutti as sole-creditor of the Bonds; and (3) provide Calcutti with registration numbers for the Bonds and proof that the Bonds were, in fact, secured for Calcutti.

The Assignment and Assumption Agreement of June 20, 1995, the terms of which were contained in the ICO, required SBU to establish a trust account for Calcutti ("the Trust") and to purchase the Bonds "to serve as the corpus" of the Trust "promptly following the execution of the Agreement." (*See* Assignment and Assumption Agreement signed by Calcutti, Croton Park, Elaine Calcutti, John Calcutti, Monaco and James R. Gibson, dated June 20, 1995 ("Assignment Agreement"), attached to Plaintiff's Affirmation in Opposition, at Ex. D, at 4.) When the Trust was created, the Private Bank and Trust Company ("Private Bank") was selected as trustee.

Two years after the ICO and Assignment Agreement were signed, Monaco sent a letter to Calcutti addressed to his mother, Elaine Calcutti. (*See* Letter from Richard G. Monaco to Elaine Calcutti, dated April 3, 1997, ("Monaco's First Letter") attached to Plaintiff's Affirmation in Opposition, at Ex. E.) Monaco attached United States Treasury Bond serial numbers to the letter with the explanation that he "finally received the documents with serial numbers from SBU."

On April 4, 2000, Calcutti received a letter from Private Bank informing him that: (1) SBU selected Flag Finance Corp. ("Flag Finance") to replace Private Bank as trustee; (2) Private Bank complied with SBU's directions and closed the Trust in August of 1996; (3) there were no assets in the Trust when it was closed; and (4) a pending litigation concerning possible misappropriation of funds by James Gibson ("Gibson"), a principal of SBU and Flag Finance, potentially could impact Calcutti's future payments. (*See* Letter from M. Gail Fitzgerald to Calcutti, dated April 4, 2000 ("Private Bank's Letter"), attached to Plaintiff's Affirmation in Opposition, at Ex. F.) Calcutti then contacted Monaco regarding Private Bank's Letter and Monaco responded in writing. (*See* Letter from Richard G. Monaco to Elaine Calcutti, dated May 5, 2000 ("Monaco's Second Letter"), attached to Plaintiff's Affirmation in Opposition, at Ex. G.)

Calcutti turned eighteen on June 18, 1998. On November 27, 2001, Calcutti filed the instant complaint against SBU, Private Bank, Monaco, Travelers, The Travelers Companies and Charter Oak Fire Insurance, Co. in New York State Supreme Court, Westchester County. (*See* Verified Complaint, dated November 27, 2001 (the "Compl.").) Monaco removed the action to this Court and filed a motion to dismiss pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure arguing that all of Calcutti's claims against him are time-barred by the applicable statutes of limitations and that some

of Calcutti's claims fail to state a claim on which relief can be granted. Monaco asserts that all Calcutti's claims accrued on June 18, 1998.

## II. DISCUSSION

### A. STANDARD OF REVIEW UNDER RULE 12(b)(6)

A district court may grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) only if it appears beyond doubt that the non-moving party could prove no set of facts that would entitle it to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Valmonte v. Bane*, 18 F.3d 992, 998 (2d Cir.1994). On a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) a Court accepts all well pleaded factual assertions in the complaint as true and draws all inferences in favor of the plaintiff. *See Hishon*, 467 U.S. at 73, 104 S.Ct. 2229; *see also McGinty v. State of New York*, 193 F.3d 64, 68 (2d Cir.1999).

The Court does not look to matters outside of the pleadings. To do so would convert the motion into one for summary judgment, which, at this stage of the proceedings, the Court declines to do. *See Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir.2000). Nevertheless, the district court's consideration of documents attached to, or incorporated by reference in, the complaint, and matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment. *See Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir.1999); *see also Intermedics v. Ventritex*, 775 F.Supp. 1258, (N.D.Cal.1991) (when ruling on a Rule 12(b)(6) motion, a district court may take judicial notice of "records and reports of administrative bodies, items in [the] record of [the instant] case, matters of general public record, and copies of document[s]

attached to [the] complaint."); Fed.R.Evid. 201.

Here, Monaco requested the Court to take notice of the ICO because Calcutti expressly relied upon it in the Complaint and it is itself matter of public record. As such, the Court will consider it. Similarly, the Court will consider the Assignment Agreement because it was introduced as part of the State Court Action and formed a basis for the ICO.

Calcutti submitted several documents in opposition to Monaco's motion, including the Settlement Agreement dated June 20, 1995, the Assignment Agreement, the Trust Agreement, dated May 22, 1995, Monaco's First Letter, Private Bank's Letter and Monaco's Second Letter. All these documents were relied upon in the Complaint, (*see* Compl., at ¶¶ 8—11, 88, 110), but not incorporated by reference. Although Monaco did not expressly object to Calcutti's proffer of documents, he limited his arguments to the text of the Complaint. With the exception of the Assignment Agreement which it specifically addressed above, the Court considers Calcutti's profer only to the extent that the submissions may identify questions of fact or suggest possible dates for Calcutti's claims.

### B. STANDARD OF REVIEW UNDER RULE 9(b)

██ Monaco argues that Calcutti failed to plead his fraud claim with the requisite degree of particularity. Rule 9(b) of the Federal Rules of Civil Procedure requires that the "circumstances constituting the fraud shall be stated with particularity with the exception that malice, intent, knowledge and other conditions of the mind may be plead generally." To satisfy Rule 9(b), a plaintiff must allege facts sufficient to establish the prima facie case of fraud: (1) the defendant made material

representations that were false; (2) the defendant knew the representations were false and made them with the intent to deceive the plaintiff; (3) the plaintiff justifiably relied on the defendant's representations; and (4) the plaintiff was injured as a result of the defendant's representations. *See Cohen v. Houseconnect Realty,* 289 A.D.2d 277, 734 N.Y.S.2d 205 (App. Div.3d Dep't 2001) (citing *Channel Master v. Aluminium Ltd. Sales,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833, 835 (N.Y. 1958), *113–14 Owners Corp. v. Gertz,* 123 A.D.2d 850, 507 N.Y.S.2d 464 (N.Y.App. Div.2d Dep't 1986), and 60 N.Y. Jur.2d Fraud and Deceit § 223).

## C. *FRAUD*

█ Monaco identified several flaws in Calcutti's pleading of fraud. First, Monaco contends that Calcutti's fraud claim is time-barred by the statute of limitations. (*See* Memorandum of Law in Support of the Motion by Defendant Richard G. Monaco to Dismiss the Complaint, March 6, 2002 ("Def.Mem."), at 7.) Monaco argues that Calcutti's fraud claim is "inextricably" related to the malpractice claim and that the three year statute of limitations for malpractice actions, New York Civil Practice Law and Rules ("CPLR") § 203(g) (" § 203(g)"), applies to Calcutti's fraud claim instead of the six-year statute of limitations for fraud, CPLR § 213(8) (" § 213(8)"). (*See* Def. Mem, at 8.) Monaco's argument does not succeed because it makes an unfounded assumption that the causes of action accrued on Calcutti's eighteenth birthday.

█ Pursuant to New York law, the statute of limitations is an affirmative de-

fense. *See Romano v. Romano,* 19 N.Y.2d 444, 280 N.Y.S.2d 570, 227 N.E.2d 389, 391 (1967). "Questions of fact that arise in applying a statute of limitations are for the trier of fact." *Maslan v. American Airlines, Inc.,* 885 F.Supp. 90, 93 (1995) (citing *Katz v. Goodyear Tire & Rubber Co.,* 737 F.2d 238, 243 n. 2 (2d Cir.1984).)

If a person is a minor at the time a cause of action accrues, and the applicable statute of limitations is at least three years and would expire within three years after the minor's eighteenth birthday, then the statute of limitations is tolled and reset to expire three years after the minor's eighteenth birthday. *See* CPLR § 208. In that situation, Calcutti's claims would have expired on July 18, 2001, making the claims asserted here untimely.

Calcutti opposed Monaco's motion on the grounds that the statute of limitations for each claim, including the fraud claim, did not accrue until Calcutti could truthfully allege each element of the claim. *See Kronos v. AVX,* 81 N.Y.2d 90, 595 N.Y.S.2d 931, 612 N.E.2d 289, 291–92 (1993) (citations omitted). In particular, Calcutti argues he could not allege the element of damages until May 5, 2000, when Monaco's Second Letter indicated that he should not expect any of the ICO payments which were due to commence on June 22, 2001. Thus, Calcutti asserts that all his claims accrued on May 5, 2000 and are timely. Neither party's argument precisely fits the facts as pled.[1]

█ A cause of action for fraud accrues on the date the plaintiff actually discovered the fraud or could have discovered it with reasonable diligence. *See German v.*

---

1. Calcutti did not allege that he learned of the certainty of damages on May 5, 2000 or provide any other relevant dates in the Complaint. Thus, Calcutti's legal argument depends on facts outside the record and does not save his pleading in its current form.

However, Calcutti's briefing does suggest that, given a chance to replead, he may be able to allege the causes of action with the requisite degree of factual specificity that would satisfy due process. *See* Fed.R.Civ.P. 8(a).

*Pope John Paul II*, 211 A.D.2d 456, 621 N.Y.S.2d 311, 312 (st Dep't 1995) ("The statute of limitations began to run when Plaintiff first became aware of the ... alleged improprieties giving rise to the cause of action for fraud, breach of contract [and] unjust enrichment."); *see also Kronos*, 595 N.Y.S.2d 931, 612 N.E.2d at 292 (in tort causes of action "accrual occurs when the claim becomes enforceable, i.e., when all elements can be truthfully alleged in a complaint."). The New York legislature codified the accrual rule in § 203(g):

> [W]here the time within which an action must be commenced is computed from the time when facts were discovered or from the time when facts could with reasonable diligence have been discovered, or from either of such times, the action must be commenced within two years after such actual or imputed discovery or within the period otherwise provided, computed from the time the cause of action accrued, whichever is longer.

CPLR § 203(g).

The text of the Complaint does not provide the requisite details for the Court to determine precisely when Calcutti reasonably could have discovered the fraud. Indeed, making such a determination at this time on the basis of the inadequate record before it would require the Court to invade the province of the jury. *See Maslan*, 885 F.Supp. at 93. Nevertheless, the Court notes that Private Bank's Letter appears to provide notice on April 4, 2000, after Calcutti turned eighteen, of a possible basis for assertions of fraud. The Complaint was filed within the three year statute of limitations if the accrual is measured from that date. Thus, the Court cannot find that Calcutti's fraud claim is time barred at this stage.

■■ Monaco also argues that Calcutti has failed to state a claim on which relief can be granted. Calcutti alleges that his fraud claim arises out of the attorney-client relationship between Calcutti and Monaco as set forth in their retainer agreement. In order to raise a claim of fraud arising out of a contractual relationship the plaintiff must allege: "(1) a legal duty separate and apart from the contractual duty to perform; (2) a fraudulent representation collateral or extraneous to the contract; or (3) special damages proximately caused by the fraudulent representation that are not recoverable under the contract measure of damages." *See Bridgestone/Firestone v. Recovery Credit Services*, 98 F.3d 13, 20 (2d Cir.1996); *Pacs Industries v. Cutler–Hammer*, 103 F.Supp.2d 570, 571–72 (E.D.N.Y.2000). A fraud claim that is premised on the same acts of nondisclosures and misrepresentations as is a legal malpractice claim may be dismissed as duplicative. *See Sage Realty Corp. v. Proskauer Rose, LLP*, 251 A.D.2d 35, 675 N.Y.S.2d 14, 18 (1st Dep't 1998) (citing *Spinosa v. Weinstein*, 168 A.D.2d 32, 571 N.Y.S.2d 747, 753 (2d Dep't 1991)).

Calcutti has not clearly identified the existence of a legal duty separate from the attorney-client relationship established by the retainer agreement, or how a fraudulent misrepresentation was collateral to the retainer agreement. Thus, the Court dismisses the fraud claim but grants Calcutti leave to replead.

Finally, should Calcutti file an amended complaint that alleges fraud against Monaco, he should address the Rule 9(b) standard set forth above. *See supra*, discussion at Part II.B. In its current form, the Complaint identifies the content of the misrepresentation, that Monaco "represented that U.S. Treasury Bonds had been purchased to fund Calcutti's settlement." (Compl., at ¶ 111.) But Calcutti does not allege the date or Monaco's knowledge and fraudulent intent with the requisite speci-

ficity. Calcutti attempts to save his bare pleading by attaching documents to his Opposition Memorandum that specify the speaker and date of the material misrepresentation. However, such untimely detail does not inform Monaco of the specific claim, a function of the complaint, so that he might formulate an answer. Accordingly, should Calcutti elect to amend the Complaint, any new pleading of fraud should contain factual assertions sufficient to satisfy Federal Rule of Civil Procedure 9(b).

### D. LEGAL MALPRACTICE

■ Monaco argues that Calcutti's claim for legal malpractice under New York law is barred by the statute of limitations, having accrued on June 18, 1998. Calcutti asserts he could not allege damages until May of 2000, and that the statute of limitations was tolled by the doctrine of continuous representation.

■ In order to state a claim for legal malpractice a plaintiff must allege that: (1) the attorney was negligent; (2) the negligence was the proximate cause of the plaintiff's loss or injury; and (3) plaintiff suffered actual damages. *See Pellegrino v. File,* 291 A.D.2d 60, 738 N.Y.S.2d 320, 323 (1st Dep't 2002) (citing *Prudential Insurance v. Dewey Ballantine,* 170 A.D.2d 108, 573 N.Y.S.2d 981 (1st Dep't 1991), *aff'd,* 80 N.Y.2d 377, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992) and *Franklin v. Winard,* 199 A.D.2d 220, 606 N.Y.S.2d 162 (1st Dep't 1992)).

■ An action to recover damages for legal malpractice must be commenced within three years of the claim's accrual. *See* CPLR 214(6). A legal malpractice claim accrues when the malpractice is committed, regardless of when it is discovered. *See Shumsky v. Eisenstein,* 96 N.Y.2d 164, 726 N.Y.S.2d 365, 750 N.E.2d 67, 69 (2001). The doctrine of continuous representation, however, tolls the statute of limitations until an attorney's representation of his client in a particular matter is terminated. *See Glamm v. Allen,* 57 N.Y.2d 87, 453 N.Y.S.2d 674, 439 N.E.2d 390, 393 (N.Y. 1982); *see also Mason Tenders District Council Pension Fund v. Messera,* 958 F.Supp. 869, 888 (S.D.N.Y.1997).

■ To invoke the doctrine of continuous representation, a plaintiff must establish "a clear indicia of an ongoing, continuous, developing and dependent relationship" between plaintiff and attorney. *Corless v. Mazza,* 295 A.D.2d 848, 744 N.Y.S.2d 249, 249 (3d Dep't 2002). If further care or monitoring is "explicitly anticipated" by both parties, then continuous representation may apply to prolong an attorney/client relationship. *Young v. New York City Health and Hospitals,* 91 N.Y.2d 291, 670 N.Y.S.2d 169, 693 N.E.2d 196, 199 (1998) (citation omitted). An attorney's services in connection with the enforcement of a settlement stipulation constitutes ongoing representation for purposes of tolling the malpractice statute of limitations and applying the doctrine of continuous representation. *See Mancino v. Levin,* 268 A.D.2d 507, 702 N.Y.S.2d 357, 358 (2d Dep't 2000).

"When there is a question of fact regarding the application of the continuous representation doctrine defendant's motion to dismiss based on the statute of limitations must be denied." *Corless,* 744 N.Y.S.2d at 249. This state rule is equally applicable to the Court's inquiry under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Maslan,* 885 F.Supp. at 93.

Calcutti does not specify in the Complaint when the alleged malpractice occurred. The malpractice claim is grounded upon Monaco's alleged failure to exercise his ordinary skill and prudence as an attorney to guarantee the purchase of Bonds to fund the annuity payments. The ICO required SBU to

provide proof that the Bonds had been purchased but does not contain a specific deadline; presumably SBU's obligation was due prior to the payment date of June 22, 2001.

Moreover, Calcutti and Monaco disagree as to when their attorney-client relationship ended. Calcutti argues that the attorney client-relationship ended on June 22, 2001 when Calcutti's payments were scheduled to begin. (*See* Plaintiff's Memorandum of Law in Opposition to the Motion by Defendant Richard G. Monaco to Dismiss the Complaint, dated February 27, 2002 ("Pl.Mem."), at 10.) Monaco, however, argues that the attorney-client relationship ended on July 21, 1995 when the settlement was signed, and that the cause of action accrued when Calcutti turned eighteen on June 18, 1998. (*See* Reply Memorandum of Law in Further Support of the Motion by Defendant Richard G. Monaco to Dismiss the Complaint, at 5.) Calcutti sought to rebut Monaco's argument by introducing correspondence. *See supra*, discussion at Part II.A.

The Court does not address disputed questions of fact when ruling on a Rule 12(b)(6) motion and must draw all reasonable inferences in the non-movant's favor. *See Brady*, 863 F.2d at 210; *Corless*, 744 N.Y.S.2d at 249. Thus, the Court cannot find that Calcutti could plead no set of facts to support his claim for legal malpractice. Accordingly, the Court denies Monaco's motion to dismiss made on this ground.

### E. *NEGLIGENCE CLAIM*

■ Monaco argues that Calcutti's claim for negligence is merely a recast claim for legal malpractice,[2] and should be dismissed as barred by the three-year statute of limitations for legal malpractice claims rather than the six-year statute of limitations for negligence claims. Calcutti opposes Monaco's motion.

■ On a motion to dismiss, a court must look to the essence of each claim and not merely the form in which it is pleaded. *See Corcoran v. New York Power Authority*, 202 F.3d 530, 544–45 (2d Cir.1999). Legal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her professional duties negligently. *See Marks Polarized v. Solinger & Gordon* 124 Misc.2d 266, 476 N.Y.S.2d 743, 744 (N.Y.Sup.Ct.1984) ("Legal malpractice, like other forms of professional malpractice, is a species of negligence. As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages."). Where a claim is incidental to another, such as negligence to professional malpractice, then the statute of limitations for the primary claim applies to both. *See Golia v. Health Insurance Plan of Greater New York*, 6 A.D.2d 884, 177 N.Y.S.2d 550, 552 (2d Dep't), *aff'd*, 7 N.Y.2d 931, 197 N.Y.S.2d 735, 165 N.E.2d 578 (1960).

. Calcutti stated that his cause of action for negligence is "based on the breach of a contractual obligation between Monaco and Calcutti." (Pl. Mem., at 8.) Thus, the Court evaluates Calcutti's claim for negligence under the three-year statute of limitations for legal malpractice. For the same reasons the legal malpractice claim survives, this negligence claim also sur-

---

2. A motion to dismiss made under Rule 12(b)(6) tests the validity of a party's allegations. By contrast, to challenge "any redundant, immaterial, impertinent, or scandalous matter" in a party's pleadings, a party should file a motion to strike pursuant to Rule 12(f).

A district court should not dismiss pleadings as redundant on a motion to dismiss where the redundant claim has validity. *See, e.g., Coffman v. Wilson Police Dept.*, 739 F.Supp. 257, 261–62 (E.D.Pa.1990).

vives Monaco's motion to dismiss under Rule 12(b)(6). *See supra*, discussion at Part II.D. Accordingly, the Court denies Monaco's motion to dismiss Calcutti's negligence claim based on the statute of limitations.

### F. BREACH OF CONTRACT

 Monaco further argues that Calcutti's breach of contract claim is barred by the applicable statute of limitations. Calcutti's breach of contract claim is based on allegations that Monaco failed to perform "all the obligations and duties under its retainer agreement" by failing to guarantee payment to the Plaintiff of money due under the Settlement Agreement. By Calcutti's accounting, Monaco has been unjustly enriched by the amount of his fee: $70,000.

A breach of contract claim, pursuant to New York law, must be brought within six years of the breach. *See* CPLR § 213. As already discussed, the questions of when the attorney-client relationship allegedly began, was breached or ended, present disputed questions of fact and may involve dates subsequent to June 18, 1998. The Court cannot determine such issues on a motion to dismiss pursuant to Rule 12(b)(6) and Monaco's motion fails on this ground.

 Monaco's motion to dismiss the claim for breach of contract was based only on the statute of limitations. Although Monaco does not raise the issue, the Court notes that under New York law, "[a] breach of contract claim against an attorney based on a retainer agreement may be sustained only where the attorney makes an express promise in the agreement to obtain a specific result and fails to do so." *See Pacesetter Communications v. Solin & Breindel*, 150 A.D.2d 232, 541 N.Y.S.2d 404, 406 (1st Dep't 1989) (citing *Boecher v. Borth*, 51 A.D.2d 598, 377 N.Y.S.2d 781 (3d Dep't 1976) and *Glens*

*Falls Ins. Co. v. Reynolds*, 3 A.D.2d 686, 159 N.Y.S.2d 95 (3d Dep't 1957)). When there is no specific promise in the contract that plaintiff claims defendant breached, the breach of contract claim is a "redundant pleading of a malpractice claim" and should be dismissed. *Senise v. Mackasek*, 227 A.D.2d 184, 642 N.Y.S.2d 241, 242 (1st Dep't 1996) (quoting *Winegrad v. Jacobs*, 171 A.D.2d 525, 567 N.Y.S.2d 249 (1st Dep't 1991), *appeal dismissed*, 78 N.Y.2d 952, 573 N.Y.S.2d 646, 578 N.E.2d 444 (1991)); *see also Sage Realty*, 675 N.Y.S.2d at 18 (citations omitted).

The Court has authority to strike *sua sponte* any redundant pleading. *See* Fed. R.Civ.P. 12(f). As pled, Calcutti's breach of contract claim is redundant of Calcutti's legal malpractice claim. The Court strikes the claim, but grants Calcutti leave to replead, identifying a specific promise, if any, that may satisfy the standard specified above.

### G. NEGLIGENT MISREPRESENTATION

Monaco argues that the statute of limitations bars Calcutti's claim of negligent misrepresentation. According to the Complaint, Monaco negligently represented that the Bonds had been purchased to guarantee Calcutti's annuity payments. (*See* Compl., at ¶ 106.) The Complaint itself does not identify whether the "representation and/or conduct" occurred prior to or after June 18, 1998.

 In New York, a negligent misrepresentation claim that is based on the same factual situation as a fraud claim is subject to a six-year statute of limitations. *See New York Seven–Up Bottling Co. v. Dow Chemical Co.*, 96 A.D.2d 1051, 466 N.Y.S.2d 478 (2d Dep't), *aff'd*, 61 N.Y.2d 828, 473 N.Y.S.2d 973, 462 N.E.2d 150 (1984); *see also In re Argo Communications*, 134 B.R. 776 (S.D.N.Y.1991) (apply-

ing New York law); CPLR § 213(8). Here, Calcutti's negligent misrepresentation claim sounds in fraud since it arises out of the same transaction and occurrence that underlie Calcutti's fraud claim. Accordingly, the appropriate limitation period is six years.

The statute of limitations for negligent misrepresentation starts on the date of the alleged misrepresentation. *See Fandy v. Lung–Fong Chen,* 262 A.D.2d 352, 691 N.Y.S.2d 572, 573 (2d Dep't 1999). Because a question of fact regarding the date of the negligent misrepresentation remains, the Court can not dismiss Calcutti's claim. *See Maslan,* 885 F.Supp. at 93. Although the Court does not dismiss the claim, it grants Calcutti leave to amend its pleading to identify the date(s) of the alleged misrepresentation(s) which would clarify the pleading. *See* Fed.R.Civ.P. 8(a).

## H. *CONVERSION*

Monaco argues that the three-year statute of limitations on Calcutti's conversion claim has elapsed. Again, Calcutti opposes Monaco's motion on the grounds that he could not allege damages until May of 2000.

Under New York law conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.,* 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982) (citing *Employers' Fire Ins. Co. v. Cotten,* 245 N.Y. 102, 156 N.E. 629 (1927)). But "[a]n action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." *Id.* Rather, the plaintiff "must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Fraser v. Doubleday*

*& Co.,* 587 F.Supp. 1284, 1288 (S.D.N.Y. 1984).

The statute of limitations for a conversion claim is three years. *See* CPLR § 214(3). Generally, the statute of limitations for a conversion claim begins to run when the conversion occurs and not when the conversion is discovered or when plaintiff exercises diligence to discover it. *See Vigilant Insurance v. Housing Authority of El Paso,* 87 N.Y.2d 36, 637 N.Y.S.2d 342, 660 N.E.2d 1121, 1126 (1995) (citing *Sporn v. MCA Records,* 58 N.Y.2d 482, 462 N.Y.S.2d 413, 448 N.E.2d 1324, 1327 (1983) and *Varga v. Credit–Suisse,* 5 A.D.2d 289, 171 N.Y.S.2d 674, *aff'd,* 5 N.Y.2d 865, 182 N.Y.S.2d 17, 155 N.E.2d 865 (1958)). Of course, if the conversion occurred while Calcutti was a minor, the cause of action would not accrue until he reached the age of majority and the limitations period would be three years.

At the same time, when the original possession of the property in question by a third party is lawful, "a conversion claim does not occur until after [plaintiff demands property] and defendant[ ] refus[es] to return the property." *D'Amico v. First Union National Bank,* 285 A.D.2d 166, 728 N.Y.S.2d 146, 151 (1st Dep't 2001) (affirming trial court's determination that statute of limitations for conversion claim does not "begin[ ] to run until plaintiff[ ] becomes aware that its agent's possession is hostile."). If a plaintiff did not request the property, a conversion occurs when the lawful "custodian of the property commits an overt and positive ... unlawful sale or disposition" of the property. *MacDonnell v. Buffalo Loan, Trust & Safe Deposit,* 193 N.Y. 92, 85 N.E. 801, 803 (1908).

Calcutti's allegations that Monaco assumed, received, or authorized others to assume or receive, a wrongful exercise of dominion or control over Calcutti's proper-

ty is devoid of specific facts. Reading the pleadings as a whole, it appears that Calcutti has alleged a right of possession over certain property due under the ICO. (*See* ICO, at 4.) But it is not clear whether that is the property Calcutti contends was converted. Furthermore, it is not clear whether Calcutti is merely restating a claim for breach of contract or has identified some other, actionable wrongdoing. *See Peters Griffin Woodward,* 452 N.Y.S.2d at 600.

■■■ Regarding Monaco's particular objection to the statute of limitations, the Court notes that any initial possession by defendants of property due under the ICO may have been consented to by Calcutti and therefore lawful. Monaco was Calcutti's agent in the state court action and settlement. SBU was a third-party custodian of Calcutti's Bonds. Calcutti does not state when he became aware of any conversion of his property, nor when or how the conversion occurred. It is impossible for the Court to discern whether the infancy toll applies. In the face of these questions of fact, Monaco's motion to dismiss based on a statute of limitations defense fails.

Nevertheless, because Calcutti's claim is devoid of facts that would put Monaco on notice, the Court must dismiss it. *See* Fed.R.Civ.P. 8(a); *see also Coakley v. Jaffe,* 49 F.Supp.2d 615, 625 (S.D.N.Y. 1999). The Court grants Calcutti leave to replead the conversion claim. Should he do so, the amended complaint must identify the dates, property, possessory right and misconduct it seeks to put at issue.

## I. CONTEMPT

■■■ Calcutti asserts a claim for contempt against Monaco for failure to abide by the terms of the ICO. Specifically, Calcutti claims that Monaco failed to "insure that Plaintiff's annuity payments were funded by the purchase of United States Bonds, which were to be registered with Plaintiff as sole creditor ... provide a copy of the annuity trust agreement and assignment and assumption agreement ... insure that the United States Bonds secure the payment of all obligations ... [and] provide Plaintiff with the registration numbers for the Bonds and provide proof to the Plaintiff that the said bonds are in fact secured to Plaintiff." (Compl., at ¶ 118.) Monaco argues that the cause of action is inapplicable to attorneys, that this Court lacks jurisdiction because it is not a "court of record" and that the claim is barred by the applicable three-year statute of limitations.

The civil cause of action for contempt is provided by statute:

A court of record has power to punish, by fine [and/or] imprisonment, ... a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action ... pending in the court may be defeated, impaired, impeded or prejudiced, in the following cases: (1) an attorney ... for a misbehavior ... or willful neglect or violation of a duty ... or for disobedience to a lawful mandate of the court.

N.Y. Jud. Law § 753(a)(1). Thus, civil contempt power exists over an attorney.

New York law confers power upon a "court of record" to punish for contempt. *Id.* Only those courts enumerated by statute constitute courts of record. *See* N.Y. Jud. Law § 2(11) ("All courts other than those specified in this section are courts not of record."). A United States District Court is not a court of record under the applicable state law. *See id.* The alleged contempt Calcutti seeks to punish did not arise from a civil action pending in this Court but from the underlying State Action. Therefore, this Court is not a court of record and lacks authority to punish, or adjudicate, a § 753 contempt claim. The

Court dismisses the claim without leave to replead and without prejudice to refiling in a more appropriate forum.

## III. *ORDER*

For the foregoing reasons, it is hereby

**ORDERED** that Calcutti's claims for fraud, breach of contract and conversion are dismissed with leave to file an amended complaint by October 15, 2002; and it is further

**ORDERED** that Calcutti have leave to amend his claim for negligent misrepresentation by October 15, 2002; and it is further

**ORDERED** that Calcutti's claim for contempt is dismissed without leave to amend; and it is finally

**ORDERED** that Monaco's motion is denied in all other respects.

**SO ORDERED.**