■ BENITA L. LEVINE et al., Respondents, v LACHER & LOVELL-TAYLOR et al., Appellants. [681 NYS2d 503] —Order, Supreme Court, New York County (Emily Goodman, J.), entered April 23, 1998, which denied defendants' motion for summary judgment in this legal malpractice action, unanimously reversed, on the law, without costs, defendants' motion granted and the complaint dismissed. The Clerk is directed to enter judgment in favor of defendants-appellants dismissing the complaint.

Plaintiff Levine and another individual, Vivian Blount, retained defendant law firm Lacher & Lovell-Taylor (LLT) to represent them in a loan transaction. Defendant Jacoby was the specific attorney who handled the matter for LLT. The $150,000 loan was to be made by Levine and Blount to Schapiro Wine Products, Inc. (Schapiro Inc.), a corporation wholly owned by Norman Schapiro (Schapiro), with the proceeds to be used to purchase a stock of Kosher wine. The loan agreement was executed on February 25, 1992, and the loan amount, plus interest, was to be repaid by June 30, 1992.

To secure the loan, Jacoby obtained a personal guaranty from Schapiro, and required that Schapiro Inc. sign a loan security agreement that gave Levine and Blount a security interest in the wine. Although the loan security agreement allowed the debtor to sell the wine (the collateral) in the regular course

of its business, it required payment to Levine and Blount of one half of the accounts receivable from those sales. The wine that was subject to the security agreement was identified in the loan documents as "the inventory of wines to be purchased with proceeds of subject loan" and stored at the debtor's place of business, and the "inventory of wine per warehouse receipt issued by S & F Warehouses." Apparently unnoticed by defendants, the attached warehouse receipt listed "Schapiro Wine Co. Ltd." (Schapiro Ltd.) as the owner of the wine, rather than Schapiro Inc., the actual debtor. Schapiro Ltd. never signed any of the loan documents.

By June 30, 1992, the loan was in default as only $41,000 had been repaid. In July 1992, Blount sold her interest in the loan to plaintiff Jacobs. Shortly thereafter, Jacoby advised Levine and Jacobs (hereinafter plaintiffs) to immediately bring suit against Schapiro and Schapiro Inc., but plaintiffs did not do so until eight months later, when represented by new counsel. In that suit, plaintiffs successfully obtained a court order requiring the Schapiro entities to deposit all future proceeds from the sale of the subject wines into an escrow account, and, subsequently, they obtained judgment against them for the loan balance of $153,944.50. Throughout this time, however, Schapiro disobeyed the injunction and continued to sell the wine without accounting for its proceeds. Schapiro was ultimately held in contempt and a receiver was appointed for his properties. Schapiro has filed for bankruptcy and plaintiffs have been unable to collect on their judgment.

Plaintiffs commenced the instant action for legal malpractice on December 13, 1995. The complaint alleged, *inter alia*, that the loan security documents were improperly prepared and examined in that the owner of the security was not the borrower, but another related entity. Plaintiffs alleged that such error constituted negligence and breach of contract, which caused them damages in the amount of $109,240. Plaintiffs also sued to recover counsel fees allegedly incurred as a result of defendants' negligence and breach of contract.

Defendants moved for summary judgment, arguing that plaintiffs should be estopped in this malpractice action from challenging the validity of the security interest documents, since they repeatedly relied on the validity of those documents in the prior action against the Schapiro entities (Schapiro action). Defendants also argued that any alleged error on their part was not the proximate cause of plaintiffs' damages since the plaintiffs' security interest was consistently upheld by the courts in the Schapiro action despite the incorrect name. The

IAS Court, despite conceding that the "error in nomenclature did not result in any adverse consequences for plaintiffs," ruled that defendants had failed to satisfy their "heavy" burden of showing that the difference in names was not a factor in the warehouse's continued release of the wine after the loan went into default.

On appeal, defendants argue that plaintiffs have failed to establish that any alleged error in their representation proximately caused damages to the plaintiffs. We agree. An action for legal malpractice requires proof of three elements: (1) the negligence of the attorney; (2) that the negligence was the proximate cause of the loss sustained; and (3) proof of actual damages (*see, Prudential Ins. Co. v Dewey, Ballantine, Bushby, Palmer & Wood*, 170 AD2d 108, 114, *affd* 80 NY2d 377; *Tinter v Rapaport*, 253 AD2d 588; *Mendoza v Schlossman*, 87 AD2d 606, 606-607, *appeal withdrawn* 57 NY2d 778). In order to show proximate cause, the plaintiff-client must establish that "but for" the attorney's negligence, the plaintiff would have prevailed in the matter at issue or would not have sustained any damages (*see, Senise v Mackasek*, 227 AD2d 184, 185; *Plentino Realty v Gitomer*, 216 AD2d 87, 88, *lv denied* 87 NY2d 805; *Zarin v Reid & Priest*, 184 AD2d 385, 386; *Pacesetter Communications Corp. v Solin & Breindel*, 150 AD2d 232, 236, *lv dismissed* 74 NY2d 892).

In the present case, plaintiffs have failed to show that "but for" defendants' alleged negligence they would have been able to collect on their judgment or foreclose on the collateral (*Senise v Mackasek, supra*; *Plentino Realty v Gitomer, supra*). The only specific negligent act or omission in the plaintiffs' complaint is their allegation that the loan documents were negligently prepared.* This "error" however, did not result in any harm to plaintiffs. Although they claim that the error rendered the loan security documents "null and void," the validity of plaintiffs' security interest was consistently upheld by a succession of court orders granting plaintiffs' requests for relief in the Schapiro action, including the court orders directing an escrow account for the wine proceeds, appointing a receiver, and declaring Schapiro in contempt (*see, Zarin v Reid & Priest, supra* [no malpractice where attorneys' arguments actually prevailed in the underlying action]). In each of these instances, the court never questioned the validity of the loan documents, but rather premised its grant of judicial relief on the validity of the plaintiff's security interest in the wine. Accordingly, the alleg-

---

* Although plaintiffs raise many other alleged acts of malpractice in their appellate brief, we see no mention of them in the complaint itself.

edly defective documents in no way impeded plaintiffs' efforts to obtain repayment of the loan or to restrain disposition of the collateral.

Instead, it is clear from the record that plaintiffs' inability to collect on their judgment resulted solely from Schapiro's disposition of the collateral after the loan went into default, in flagrant disregard of the court orders upholding plaintiffs' security interest in the wine. We do not accept, as the IAS Court did, plaintiffs' speculative argument that the collateral may have been released by the warehouse based upon the alleged error in the corporate name on the loan security documents (see, Metz v Coopers & Lybrand, 210 AD2d 624, 626 [malpractice claim dismissed where based on speculative allegation that had attorney given proper advice, damages and fees would have been reduced]). Plaintiff produced no evidence in admissible form demonstrating that the warehouse relied on the error at the time it released the wine. The 1995 letters from the warehouse's counsel suggesting that no security interest existed, written after the warehouse was named as a defendant in the Schapiro litigation, were insufficient to establish such a causal nexus. In any event, the initial notice sent to the warehouse advising it of Schapiro's default and plaintiff's lien requested that the warehouse prevent removal of the collateral "by Schapiro Wine Products or any third person."

Additionally, the loan agreement specifically provided that the debtor was perfectly free to sell the wine collateral in the course of business so long as the debtor paid the plaintiffs one-half the proceeds from such sales. Thus, the situation where the collateral would be sold, leaving Schapiro's personal guaranty as the only security, was contemplated from the outset. Further, plaintiffs themselves bear significant responsibility for the dissipation of collateral where they ignored Jacoby's advice to commence suit immediately upon default (see, Tinter v Rapaport, supra [lost opportunity to recover collateral does not constitute malpractice where attorney's initial advice is accurate]). Both of these facts substantially undermine plaintiffs' unsupported claim that their damages were caused by defendants' negligence. We find distinguishable those cases where the attorney's negligent preparation of loan documents is the direct cause of a third-party creditor obtaining a priority over the plaintiff's security interest (see, Khadem v Fischer & Kagan, 215 AD2d 441, 442-443 [question of fact exists whether attorney's delay in pursuing action caused client to be an unsecured creditor with little chance of recovery]; Deb-Jo Constr. v Westphal, 210 AD2d 951 [summary judgment in legal

malpractice action proper where attorney failed to perfect client's security interest, causing client to lose security to subsequent secured creditor]).

We also take issue with the IAS Court's finding that defendants failed to meet their burden on this summary judgment motion. Defendants met their burden by showing an absence of proximate cause, an essential element of plaintiffs' malpractice cause of action. The IAS Court imposed on defendants a burden, normally reserved for trial, to "prove" that the difference in the corporate name was "not a factor" in the release of the collateral. Once defendants made their showing of no proximate cause, the burden shifted to plaintiffs to demonstrate a material issue of fact on the question of proximate cause (*Pacesetter Communications Corp. v Solin & Breindel, supra*, at 235). In light of the judicial approval of the security interest, and the lack of any causal nexus between the name on the documents and the release of collateral, plaintiffs failed to do so.

Plaintiffs' breach of contract cause of action must also be dismissed. "While it is true that a breach of contract claim need not be based on an express promise to the client (*Santulli v Englert, Reilly & McHugh,* 78 NY2d 700, 706), a breach of contract claim premised on the attorney's failure to exercise due care or to abide by general professional standards is nothing but a redundant pleading of the malpractice claim (*Senise v Macaksek, [supra]*)." (*Sage Realty Corp. v Proskauer Rose,* 251 AD2d 35, 38-39.) The allegation in plaintiffs' complaint that defendants "advised" them that the loan "was adequately secured and collateralized" is not evidenced by any retainer agreement and is too vague to support a breach of contract claim. Further, as with the malpractice cause of action, plaintiffs failed to produce evidence in admissible form establishing that their damages flowed from this alleged breach (*see, Damstetter v Martin,* 247 AD2d 893, 894). Concur—Milonas, J. P., Rosenberger, Wallach, Tom and Mazzarelli, JJ.